FILED
DEC 04 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARK ASSIST, LLC,<br>　　　　Plaintiff,<br>v.<br>SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY; and ACE PARKING MANAGEMENT, INC.,<br>　　　　Defendants. | Case No.:　3:18-cv-02068-BEN-DEB;<br>　　and 3:18-cv-02409-BEN-DEB<br><br>**CLAIMS CONSTRUCTION ORDER** |
| INDECT USA CORP.,<br>　　　　Plaintiff,<br>v.<br>PARK ASSIST, LLC,<br>　　　　Defendant. | |

## I. INTRODUCTION

These related patent infringement matters come before the Court for claim construction. On September 15, 2020, the Parties submitted Joint Hearing Statements, Claim Construction Charts, and Claim Construction Worksheets. 2068 ECF No. 92, 93,

94, 95; 2409 ECF No. 65, 66, 67, 71.[1]  On October 27, 2020, each Party submitted their respective opening claim construction briefs. 2068 ECF No. 96, 97, 98; 2409 ECF No. 72, 73. On November 10, 2020, the Parties also submitted responsive claim construction briefs. 2068 ECF No. 100, 101, 102; 2409 ECF No. 75, 76. On December 2, 2020, the Court issued a Minute Order submitting the matters on the papers. 2068 ECF No. 103; 2409 ECF No. 79.

## II. BACKGROUND

Park Assist, LLC ("Park Assist") owns U.S. Patent Number 9,594,956 ("the '956 Patent") titled "Method and System for Managing a Parking Lot based on Intelligent Imaging." 2068 ECF No. 1, 3. Broadly, the '956 Patent teaches a parking guidance system that allows the operator of a parking lot or garage to determine occupancy of parking spaces in the lot or garage. 2068 ECF No. 98, 6; *see also* 2068 ECF No. 23-1, 1. The '956 Patent improves upon prior art by providing a better system for managing a parking lot based on intelligent imaging. 2068 ECF No. 51, 6-8. The '956 Patent contains one independent claim and one dependent claim. *Id.* at 2.

Park Assist alleges the San Diego County Regional Airport Authority (the "Airport") and Ace Parking Management ("Ace Parking") infringe on the '956 Patent by using a competing parking guidance system made by Indect USA Corporation ("Indect"). 2068 ECF No. 1, 4. After Park Assist sued the Airport and Ace Parking, Indect sued Park Assist seeking declaratory relief on non-infringement as well as damages for unfair competition. *See generally* 2409 ECF No. 1.

## III. LEGAL STANDARD

The construction of claims within a patent presents an issue of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "It is a bedrock principle of patent law that the claims of a

---

[1] "2068 ECF No." shall refer to the docket in Case No. 3:18-cv-02068-BEN-DEB, while "2409 ECF No." shall refer to the docket in Case No. 3:18-cv-02409-BEN-DEB.

2

3:18-cv-02068-BEN-DEB;
and 3:18-cv-02409-BEN-DEB

patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citation omitted). Construing the claims of a patent entails first analyzing intrinsic evidence, and second, if needed, extrinsic evidence. *See, e.g., Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) ("When construing claim terms, we first look to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive."); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (noting that "[e]xtrinsic evidence may also be considered, *if needed* to assist in determining the meaning or scope of technical terms in the claims."). Intrinsic evidence includes the patent claims, specification, and prosecution history. *Personalized Media Commc'ns*, 952 F.3d at 1340. Extrinsic evidence may include expert testimony, product catalogs, journal articles, inventor testimony, dictionaries, and scientific treatises. *Phillips*, 415 F.3d at 1317; *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1221 (Fed. Cir. 2020).

Claim terms "are generally given their ordinary and customary meaning" as understood by a person having ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312 (internal citations omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence. *Phillips*, 415 F.3d at 1314.

First, a court should look to the plain language of the claims. *See Vitronics*, 90 F.3d

at 1582. A disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (internal citations omitted). Accordingly, "'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1383 (Fed Cir. 2014) (quoting *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)).

Second, a court must also read claims "in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal citation omitted). "Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term." *Vederi*, 744 F.3d at 1382 (internal citation omitted). For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (internal citation omitted). However, a claim construction must not import limitations from the specification into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012).

Third, courts should consider the patent's prosecution history, which is the record of proceedings before the Patent and Trademark Office ("PTO"), as it may indicate how the inventor and PTO understood the patent. *Phillips*, 415 F.3d at 1317. The prosecution history includes the prior art cited during the patent examination. *Id.* "Prior art" is defined as "[k]nowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge." Garner, Brian A., *Black's Law Dictionary*, ART (11th ed. 2019). "Prior art includes (1) information in applications for previously patented inventions; (2) information that was published more than one year before a patent application is filed;

and (3) information in other patent applications and inventor's certificates filed more than a year before the application is filed." *Id.* However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

If the intrinsic evidence resolves the ambiguity in the disputed claim terms, then, "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583. If ambiguities in the claim terms remain, however, courts may consider extrinsic evidence. *Id.* at 1584. However, where after resort to extrinsic evidence, the claims of a patent lack the definiteness to allow someone skilled in the relevant art at the time the patent was filed to understand the scope of the patent, the patent will be held invalid due to indefiniteness. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "[A] patent must be precise enough to afford clear notice of what is claimed thereby apprising the public of what is still open to them." *Id.* at 909 (internal quotations omitted). However, "absolute precision is unattainable," and the Court "must take into account the inherent limitations of language." *Id.* at 910. Terms of degree do not render a claim indefinite so long as the term "provide[s] enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014).

## IV. DISCUSSION

In accordance with Local Patent Rule 4.2, the Parties identified several terms for construction. *See* 2068 ECF No. 95; 2409 ECF No. 66. Both cases require construction of the same eight terms of the '956 Patent. *See id.* Park Assist's proposed constructions are the same in both cases pending before the Court. *Id.* Ace Parking joined the Airport's briefs for claim construction, and both the Airport and Indect agree on alternative proposed constructions of these eight terms. *Id.* For convenience, the Court refers to the Airport, Ace Parking, and Indect as "Defendants" when discussing these Parties collectively. When one Defendant offers different reasoning to support Defendants' proposed construction, the Court refers to that Defendant by name.

The disputed terms are:

1. "collocated"
2. "high resolution image"
3. "thumbnail image"
4. "displaying a thumbnail image"
5. "infringement process"
6. "permit identifier"
7. "(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;" and
8. "(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status."

Based on the Parties' submissions and applicable law, the Court construes the submitted claim terms from the '956 Patent as set forth below.

### 1. **Collocated**

The above language is found in claim 1, limitation (c). Park Assist argues "collocated" should mean "together within the same unit or housing." 2068 ECF No. 95-1, 1. Defendants argue "collocated" should mean "placed together or close together." 2068 ECF No. 97, 24.

The term "collocated" is used within claim 1 to describe the location of the "multicolor indicator" with reference to the "imaging device" or camera described in the '956 Patent:

> (c) assigning said parking space, in which said occupancy was detected, an occupied status, wherein said occupied status is indicated by illuminating a first color of a multicolor indicator *collocated* with said imaging device, and first color predefined to determine said occupied status.

6

'956 Patent, Col. 22:37-42 (emphasis added). "Collocated" is not defined in the specification.

Park Assist argues its proposed construction finds support in the specification because several of the figures describe an "integrated camera, indicator, processor and illumination module" or an indicator integrated with or within a camera or imaging device. 2068 ECF No. 98, 11. It also cites to the prosecution history, asserting the examiner understood the imaging device and indicator would be collocated by being "included in the same unit." *Id.* at 12; *see also id.*, Ex. B, 4.

Indect argues Park Assist improperly seeks to narrow a broad claim based on the specification when Park Assist has not made a clear disavowal of claim scope. 2068 ECF No. 75, 4. Defendants further argue their proposed construction is consistent with the plain language of the claim, and that the examples cited by Park Assist "indicate that the patentee understood how to describe an indicator as 'within' or 'in the same unit' as a camera, but intentionally chose not to use that definition when drafting its claims." 2068 ECF No. 97, 20.

The Court agrees with Defendants. "It is established that 'as a general rule claims of a patent are not limited to the preferred embodiment . . . or to the examples listed within the patent specification.'" *Glaxo Wellcome, Inc. v. Andrx Pharmaceuticals, Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003) (quoting *Dow Chemical Co. v. United States*, 226 F.3d 1281, 1293 (Fed. Cir. 2000)). Moreover, "[t]he patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

While these cases present the slightly unusual variation of a patentee advocating a limitation on the claim, the Court is bound to apply these principles of claim construction. Park Assist may have made its claim broader than its preferred embodiments, but it could have used language that would have accomplished its sought limitation within the claim. Defendants proposed construction is also consistent with the plain and ordinary meaning

of "collocated."

Accordingly, the Court construes "collocated" as *placed together or close together*.

## 2. High resolution image

The term "high resolution image" is found in claim 1, limitations (d), (e), and (i). '956 Patent, Col. 22:43-48, 22:63-68. Park Assist argues "high resolution image" should mean "an image of high enough resolution to extract a permit identifier such as a license plate number." 2068 ECF No. 98, 18. Alternatively, Park Assist proposes "an image of sufficient resolution to extract a permit identifier such as a license plate number." 2068 ECF No. 102, 3. Defendants argue the term is indefinite and therefore cannot be construed. 2068 ECF No. 97 at 9.

The term "high resolution image" is used within claim 1 as follows:

> (d) obtaining, as a result of said parking space having said occupied status, a single *high resolution image* of a vehicle occupying said parking space, said *high resolution image* obtained by said imaging device;
> (e) storing at least part of said *high resolution image* on a storage device; . . .
> (i) extracting from said *high resolution image*, by digital image processing, a permit identifier for said vehicle and comparing said permit identifier with at least one parking permit identification stored on said storage to determine a permit status of said parked vehicle.

'956 Patent, Col. 22:43-48; 22:63-67. "High resolution image" is not defined in the specification.

Park Assist argues the usage of the term in the claim itself provides the necessary support for its proposed construction. 2068 ECF No. 98, 12. It argues that a "high resolution image" is an image of such resolution that the "permit identifier," which could include a license plate, can be read and extracted. *Id.* at 13. Park Assist further argues the specification supports its proposed construction, consistently illustrating that when a camera detects a vehicle, a system controller requests a "high resolution image" of the vehicle and the system controller then extracts text from that "high resolution image." *Id.*

1  (citing '956 Patent, Col. 1:48-55; 12:64-13:2; 19:54-56; 20:37-41; and 20:62-65).

2  Defendants argue "high resolution image" is indefinite "because it neither provides an objective limit to 'high' nor identifies which meaning of 'resolution' controls." 2409 ECF No. 75, 2. In other words, Defendants assert, the '956 Patent fails to provide an objective standard for determining "how 'high' is 'high enough'" or which of the many potential definitions of "resolution" applies to the term here. *Id.*

Indefiniteness is a question of law for the Court. *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1370 (Fed. Cir. 2017). It must be proven by clear and convincing evidence, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011), and must overcome a patent's presumption of validity. 35 U.S.C. § 282.

The claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.*, 572 U.S. at 901. This requires the claim to be precise enough to afford "clear notice of what is claimed," which apprises the public of what is still open to them. *Id.* at 909. However, "absolute precision is unattainable," and the Court "must take into account the inherent limitations of language." *Id.* at 910. Terms of degree do not render a claim indefinite so long as the term "provide[s] enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC*, 766 F.3d at 1370.

Applying these principles, the Court concludes that Park Assist's proposed alternative construction provides objective boundaries to define the term in the context of the invention. The specification discusses "high resolution image" in the context of reading and extracting a permit identifier, such as a license plate, and distinguishes between an "occupancy image" and an "identification image." '956 Patent, Col. 1:48-55. The specification further teaches how these images differ in purpose in the context of this particular invention. *Id.* at 20:62-65. That is all that is required for a term of degree to be

found definite. *See Interval Licensing*, 766 F.3d at 1370. Defendants attempt to make the language here more complex than its plain and ordinary meaning in this context demands. Nonetheless, avoiding the use of "higher" and replacing it with "sufficient" as proposed in Park Assist's alternative construction will provide additional clarity to the jury in deciding this matter. It is clear that "high resolution image" as used within the '956 Patent means *an image of sufficient resolution to extract a permit identifier such as a license plate number*. Accordingly, the Court adopts this proposed alternative construction.

### 3. <u>Thumbnail image</u>

The term "thumbnail image" is found in claim 1, limitations (f) and (g). '956 Patent, Col. 22:49-55. Park Assist argues "thumbnail image" should mean "a small image of a picture on the computer screen." 2068 ECF No. 102, 15-16. Defendants argue the term is indefinite. 2409 ECF No. 75, 2.

The term "thumbnail image" is used within claim 1 as follows:

> (f) displaying a *thumbnail image* of said parking space on a graphic user interface (GUI), said *thumbnail image* digitally processed from an image electronically communicated to said GUI from said imaging unit;
> (g) deciding whether said occupied status is incorrect, based on a visual review of said *thumbnail image* on said GUI;
> (h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said *thumbnail image* is vacant and said computer terminal electronically communicating a command to toggle said multicolor indicator to illuminate a second color, said second color predefined to indicate a vacant status.

956 Patent, Col. 22:49:55. "Thumbnail image" is not defined in the specification.

Like its arguments regarding "high resolution image," Park Assist contends the specification and patent history provide support for its proposed construction. 2068 ECF No. 98, 16-17. It also argues the Airport's expert agrees its proposed construction would be understood by a person of ordinary skill in the art. *Id.* at 17. Park Assist succinctly summarizes that "where an accused infringer is using a small image of a picture from the

10

3:18-cv-02068-BEN-DEB;
and 3:18-cv-02409-BEN-DEB

imaging unit of claim 1 to review and determine occupancy, it is clear that they are within the claim limitation." *Id.* at 18.

Defendants again argue that "thumbnail image" has no boundaries and thus could be an image of any size. 2409 ECF No. 72, 14; ECF No. 97, 17. Accordingly, Defendants contend, the term is indefinite and the '956 Patent is invalid. *See, e.g., Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). Defendants also cite to extrinsic expert evidence, contending that these experts demonstrate that a person of ordinary skill in the art would not be able to attach an appropriate meaning to the term. 2068 ECF No. 97, 17. Both arguments miss the mark.

As with "high resolution image," the Court finds Park Assist's proposed construction of "thumbnail image" has adequate support within the specification and patent history. The use of "thumbnail image" here is distinguishable from the use of "unobtrusive manner" analyzed by the Federal Circuit in *Interval Licensing*. 766 F.3d at 1371. There, the court found "sufficient guidance [was] lacking in the written description of the asserted patents." *Id.* Here, by contrast, the specification teaches how a "thumbnail image" is used on a graphic user interface ("GUI"), which would commonly be a computer screen, to allow a parking lot manager to interface with the system and monitor parking. '956 Patent. Fig. 7 and 8; Col. 16:9-16. The "thumbnail images" in those figures are "small images of pictures" on a "computer screen." Though they may vary somewhat in size, a "thumbnail image" in the context of the '956 Patent is bounded by the GUI on which it is displayed. Even extrinsic expert evidence supports Park Assist's proposed construction. The Airport's expert testified that he knew the term "thumbnail image" to mean an image that is a placeholder for another image, usually with a lower memory requirement. *See* 2068 ECF No. 98-11, Havelick Tr. at 81:11-15.

Accordingly, the Court construes "thumbnail image" as *a small image of a picture*

11

3:18-cv-02068-BEN-DEB;
and 3:18-cv-02409-BEN-DEB

*on the computer screen.*

### 4. Displaying a thumbnail image

The phrase "displaying a thumbnail image" is found in claim 1, limitation (f). '956 Patent, Col. 22:49-52. Park Assist argues "displaying a thumbnail image" should mean "displaying a small image of a picture of a parking space on a computer screen." 2068 ECF No. 98, 19. Defendants argue the term should mean "displaying a real-time thumbnail image of said parking space." ECF No. 95-1,

The term "displaying a thumbnail image" is used within claim 1 as follows:

> (f) *displaying a thumbnail image* of said parking space on a graphic user interface (GUI), said thumbnail image digitally processed from an image electronically communicated to said GUI from said imaging unit;
> (g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;
> (h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multicolor indicator to illuminate a second color, said second color predefined to indicate a vacant status.

'956 Patent, Col. 22:49-62. The specification does not define the term, but the Court's construction of "thumbnail image" above informs the construction of the term here.

Park Assist argues Defendants' proposed construction adds a "real-time" limitation that is not in the claim. ECF No. 98, 19. Instead, Park Assist argues, the '956 Patent "plainly teaches that thumbnail images are not real-time and may be [ten] minutes old." *Id.* (citing '956 Patent, Col. 15:62-16:8).

Defendants argue that reading limitation (f) of the claim alone, without reading limitations (g) and (h), would render limitation (f) meaningless to a person of ordinary skill in the art. ECF No. 72, 19; ECF No. 97, 21. Defendants further argue the '956 Patent was intended to provide real-time feedback to improve parking guidance system accuracy, which is a problem identified with prior art systems by the '956 Patent. ECF No. 97, 21. Adopting a construction that allows for a ten-minute delay, Defendants

12

reason, would not be an improvement on prior art.

Here, Defendants propose a construction that will better assist the jury. Fundamentally, Park Assist's construction and reliance on the ten minutes threshold found in one embodiment misrepresents the invention's purpose. This embodiment teaches that the thumbnail image on the GUI should be no more than ten minutes old before the system controller requests a new image of the parking space from the associated camera unit. '956 Patent, Col. 15:62-16:8. However, this embodiment also teaches that the thumbnail is updated every time a vehicle enters or exits a parking space. *Id* at 16:1-2. Thus, the intent of the invention is in part to "provide real-time feedback," and the ten-minute threshold is merely a failsafe provision designed as a back-up to an undetected entry or exit. *See also* '956 Patent, Col. 14:58-61 ("Enforcement. The system can track in real time whether a particular parking space is correctly occupied, for every parking space, 24 hours a day"). A person of ordinary skill in the art would determine this from reading the specification, particularly from reading how intervention can correct – in real-time or at least near real-time – an erroneous indicator that marks a space as vacant when it is occupied or vice versa, using the display of a thumbnail image.

Accordingly, the Court construes "displaying a thumbnail image" as *displaying a small near real-time image of a picture of said parking space on the computer screen.*

### 5. Infringement Process

The above language is found in claim 1, limitation (j). '956 Patent, Col. 23:1-4. Park Assist argues "infringement process" should mean "providing a notification of unauthorized parking." 2068 ECF No. 98, 20-21. Defendants argue "infringement process" should mean "providing a notification to staff that they have parked outside a designated staff parking area." 2068 ECF No. 97, 22.

The term "infringement process" is used in claim 1 as follows:

> (i) extracting from said high resolution image, by digital image processing, a permit identifier for said vehicle and comparing said permit identifier with at least one parking permit identification stored on said storage to determine a permit status

13

       of said parked vehicle; and
       (j) initiating an *infringement process* for said vehicle having said permit identifier that fails to coincide with at least one of said at least one parking permit identification.

'956 Patent, Col. 22:63-23:4. The specification does not define "infringement process," and the Parties agree this term does not have a plain and ordinary meaning. 2068 ECF No. 97, 23.

    Park Assist argues its proposed construction is supported by the specification's description of the "Permit Parking Control" and "Enforcement" features. 2068 ECF No. 98, 21-22. Park Assist also argues extensively that Defendants' proposed construction impermissibly limits the infringement processing to staff parking areas only. *Id.* at 22. Defendants respond that the only place the '956 Patent teaches "infringement process" is where the additional "Permit Parking Control" feature is described. 2068 ECF No. 97, 22-23. "Permit Parking Control," Defendants allege, is limited to staff parking areas and not the "Tiered Parking Control" feature described elsewhere in the specification that enables variable cost to be imposed for different parking spaces. *Id.* at 23. Thus, the construction of "infringement process" should be limited to staff parking areas because that limitation is "consistent with the patent's only disclosure of an 'infringement process' to the public." *Id.*

    While the Court agrees that the "Permit Parking Control" feature description contained in the specification is confusing, a broader view of the specification clearly contemplates an "infringement process" that occurs in areas outside a "designated staff parking area." For example, the "Enforcement" feature described in the specification discusses how a vehicle parked in one space for too long or a vehicle parked in more than one space can be detected and acted upon. '956 Patent, Col. 14:59-67. In addition, the prosecution history describes how an "infringement process" is initiated whenever there is a mismatch between a permit identifier, discussed below, and a particular parking area in the lot or garage. 2068 ECF No. 98, Ex. 1, 20. These explanations in the specification illuminate what is meant by "infringement process" and guide the Court to the proper

14

3:18-cv-02068-BEN-DEB;
and 3:18-cv-02409-BEN-DEB

construction. *See Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction") (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1248, 1250 (Fed. Cir. 1998)).

Accordingly, the Court construes "infringement process" as *a notice of unauthorized parking*.

### 6. Permit identifier

The Parties' agree that "permit identifier" means "an attribute that can be used to identify the permit status of a parked vehicle including a permit badge, license plate number or unique combination of vehicle make, model, color and other identifying marks." 2068 ECF No. 95-1, 14. Having considered the Parties' agreed construction, the Court believes the proposed construction would aid the jury in its findings of fact on infringement. Accordingly, the Court construes "permit identifier" as *an attribute that can be used to identify the permit status of a parked vehicle including a permit badge, license plate number or unique combination of vehicle make, model, color and other identifying marks*.

### 7. (g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI

The above language is the entirety of claim 1, limitation (g). '956 Patent, Col. 22:53-55. Park Assist argues the phrase needs no construction and should be given its plain and ordinary meaning. 2068 ECF No. 98, 23. Defendants' proposed construction is "(g) deciding, by a human operator, whether said occupied status is incorrect, based on a review of said thumbnail on said GUI." 2068 ECF No. 95-1, 16. This proposed construction adds "by a human operator" and removes "visual" from the claim. The phrase appears in its entirety within claim 1, and no further context is required.

Defendants argue a person of ordinary skill in the art would understand limitation (g) to require a human operator to decide whether the "occupied" status of a parking space displayed on the thumbnail image is correct. 2068 ECF No. 97, 23-24. Defendants

further argue the word "visual" means "sensing by a human," and therefore their proposed construction adds clarity by directly mentioning "human intervention" as opposed to leaving the human aspect of the limitation implied by the use of "visual." *Id.* Defendants support this argument by citing to the Court's ruling on the Airport and Ace's motion to dismiss Park Assist's claims. 2068 ECF No. 97, 24; 2409 ECF No. 72, 21.

First, Defendants misread the Court's Order. The portion of the Order cited by Defendants provides examples of technological improvements in the '956 Patent and cannot be read to import limitations into the '956 Patent's claims here. *See* 2068 ECF No. 51, 7. Second, the Federal Circuit has cautioned that the Court must "avoid the danger of reading limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323. "[T]he claims of a patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). When construing "collocated," above, the Court noted that Park Assist made its claim broader than its preferred embodiments, though it could have used language that would have accomplished its sought limitation. The same principle applies the other way here. Park Assist could have added the "by a human operator" limitation to the claim but did not, and the Court finds it inappropriate to add that limitation now.

Accordingly, the Court declines to construe "(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI." The plain and ordinary meaning of the phrase applies.

8. **(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status**

The above language is the entirety of claim 1, limitation (h). '956 Patent, Col. 22:56-62. Park Assist argues the phrase needs no construction and should be given its

16

3:18-cv-02068-BEN-DEB;
and 3:18-cv-02409-BEN-DEB

plain and ordinary meaning. 2068 ECF No. 98, 24. Defendants' proposed construction is "(h) correcting said occupied status, by the human operator inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to switch said first color of said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status." 2068 ECF No. 95-1, 18. This proposed construction again adds "by the human operator" and changes the word "toggle" to "switch." The phrase appears in its entirety within claim 1, and no additional context is required.

Park Assist argues Defendants again impermissibly limit the claim by adding a "human operator" requirement. 2068 ECF No. 98, 24. Park Assist also argues that the change from "toggle" to "switch" has no support in the specification, and that reliance on a dictionary definition here would confuse rather than clarify. *Id.* Defendants respond by re-arguing their points about a "human operator" requirement discussed in the previous section. 2068 ECF No. 97, 25; 2409 ECF No. 72, 23. Defendants further argue that changing from "toggle" to "switch" will assist the jury in making sense of the claim. *Id.*

The Court rejects Defendants' arguments about a "human operator" requirement for the reasons set forth in the previous section. With respect to "toggle" or "switch," the Court finds that the change would not meaningfully assist the jury. Moreover, the '956 Patent uses the term "switch" in the specification in relation to ethernet communications, which could induce more confusion than the change would relieve. *See, e.g.*, '956 Patent, Col. 8:39, 8:55, and 9:1.

Accordingly, the Court declines to construe "(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status." The Court finds that the plain meaning should control because a person having ordinary skill

in the art would understand the meaning of these terms. Therefore, no construction is necessary.

**IT IS SO ORDERED.**

Date: December 13, 2020

HON. ROGER T. BENITEZ
United States District Judge